## NIBLETT vs. WHITE'S HEIRS.

APPEAL FROM THE COURT OF THE FIFTH JUDICIAL DISTRICT, THE JUDGE THEREOF PRESIDING.

Where a person borrows the slave of another, to do certain work for him, and through his neglect, or imprudent conduct, the slave dies, he will be bound to pay his value to the owner.

So where A borrows the slave of B, to haul a load seven or eight miles, and a storm comes on, and the borrower refuses to stop and take shelter for himself and the slave, and the latter is lost, A will be answerable to B, in damages for the value of the slave.

This is an action for damages, against the widow and heirs of the late Joseph White, to recover the value of a negro boy, owned by the plaintiff, and alleged to have been lost by the negligence of the said White, while in his possession on loan.

The petition charges, that in the month of February, 1832, the plaintiff loaned a negro boy named Cesar, about sixteen years of age, to Joseph White, then living in the parish of Lafayette, who engaged, as he was bound by law, to take good care of said boy, and treat him well. That instead of doing

WESTERN DIST.
September, 1834.

NIBLETT
vs.
WHITE's HEIRS.

so, he required the boy to work after night, in the cold and rain, at a very unusual hour, without using any precaution to protect him from the cold and inclemency of the weather, in consequence of which he died; he alleges the boy was worth eight hundred dollars, and that he has sustained damages resulting from his loss, of two hundred dollars more; that his widow and heirs have accepted his succession, and become liable for the amount of his said claim, for which the said White, by his negligence and misconduct, had rendered himself liable in his life-time. He prays judgment for the said sums amounting to one thousand dollars.

The defendants plead a general denial, except what is expressly admitted: They admit that Joseph White had permission of the plaintiff, to employ his boy on a Sunday, about the time mentioned in the petition, but that he took all proper care of said slave, which his situation and circumstances would permit, and that the boy was lost without any fault or negligence on the part of the deceased. They pray that the plaintiff's demand be rejected.

The testimony showed, that the plaintiff and White lived neighbors to each other, and were in the habit of borrowing and lending to each other. That on a Saturday, White was assisting the plaintiff with his oxen to move a house somewhere in the neighborhood; that White had some *pieux* near the place to which the house had been removed, told plaintiff it would be a good time for him to get his *pieux* home if the plaintiff would hire his negroes and oxen the next day, (Sunday,) to which the plaintiff assented on White's agreeing to pay the negroes for their Sunday work. It was seven or eight miles to White's house, to which the *pieux* had to be hauled, and they were late in the day getting at them. The weather which had been warm on Saturday, the day preceding, (the negroes being thinly clad,) suddenly changed and blew a storm of rain and sleet. The negroes and carts had a bad morass or *marais* to cross in their way; night came on, and by the time they got across the morass to a house, the negro boy in question, was frozen to death.

WESTERN DIST.
September, 1834.
NIBLETT
vs.
WHITE'S HEIRS.

The plaintiff's testimony further showed, that it was one or two o'clock at night, when White came home, nearly perished with cold, and told his wife, he wished he had never seen the *pieux*; that one of the plaintiff's negroes was dead, and he expected he would have him to pay for.

The district judge was of opinion, the defendant's were responsible for the value of the slave lost, gave judgment accordingly for six hundred dollars, and costs of suit. The defendants appealed.

*Brownson,* for the plaintiff.

*Garland,* for the defendants.

*Martin, J.,* delivered the opinion of the court.

The plaintiff claims the value of one of his slaves, which he lent to White, and who through the gross neglect and ill conduct of White, was compelled to travel, during a great part of the night, while a very uncommon storm raged, although very thinly clad, so that he suffered so much through fatigue and the inclemency of the weather, that he died.

The defendants denied the ill usage and misconduct attributed to him.

There was a judgment for the plaintiff, and the defendants appealed.

No question of law arises in this case which turns entirely on matters of fact. We have carefully examined the testimony, and are unable to conclude that the district judge erred. It appears the deceased was warned by a person near whose house he passed, of the danger of pursuing his journey during the storm, and the offer was made to him of a shelter for himself and the negroes who were with him; but he persisted in continuing to travel.

Where a person borrows the slave of another to do certain work for him, and through his neglect or imprudent conduct, the slave dies, he will be bound to pay his value to the owner.

So where A borrows the slave of B, to haul a load seven or eight miles, and a storm comes on, and the borrower refuses to stop and take shelter for himself or the slave, and the latter is lost, A will be answerable to B, in damages for the value of the slave.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.